**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION**

| | | |
|---|---|---|
| TRINA WILKINS, JAMES BISHOP, LISA BISHOP, TONI CORDOVA, JOHN CORTINA, JILL CORTINA, GEORGE DEMKO, MARY HELTON, D.J., SYDNEY JOHNSON, DAMON LAFORCE, MICHAEL MASULA, ERIN MASULA, JAMES MATTHEWS, THOMAS OLSZEWSKI, DARLENE COOKINGHAM, THOMAS STANZIANO, WENDY STANZIANO, EDDIE VIERS, WILLIAM MCNEW, JEANNE WALLACE, JAMES WALLACE, SAMUEL WALLACE, NATE BROOKS, AMBER BRITTON, and DOVAN HELTON, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 4:20-cv-00051-TWP-DML |
| v. | ) ) ) | |
| GENZYME CORPORATION, | ) ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

This matter is before the Court on a Motion to Transfer Venue filed by Defendant Genzyme Corporation ("Genzyme") pursuant to 28 U.S.C. § 1404(a) (Filing No. 68). Trina Wilkins and numerous other plaintiffs named in the caption (collectively, "Plaintiffs") initiated this proposed class action lawsuit against Genzyme for numerous claims involving health care pharmaceutical personal injury and product liability. After the Plaintiffs filed a Second Amended Complaint, Genzyme promptly filed a Motion to Transfer Venue, asking the Court to transfer this action to the United States District Court for the District of Massachusetts. A video oral argument was held on December 16, 2020. For the following reasons, the Court **grants** the Motion.

## I.   <u>LEGAL STANDARD</u>

A party may seek change of venue pursuant to 28 U.S.C. § 1404(a), which states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

"[S]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to a case-by-case consideration of convenience and fairness. By the same token, [appellate courts] grant a substantial degree of deference to the district court in deciding whether transfer is appropriate." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977–78 (7th Cir. 2010) (internal citations and punctuation omitted). The Seventh Circuit has further explained,

> The statutory language guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice. The statute permits a flexible and individualized analysis and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations.

*Id.* at 978 (internal citation and quotation marks omitted).

Concerning the factor of "convenience," courts consider the availability of and access to witnesses, each party's access to and distance from resources in each forum, the location of material events, and the relative ease of access to sources of proof. *Id.* "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Id.*

Concerning the factor of the "interest of justice," courts consider the efficient administration of the court system, docket congestion and likely speed to trial in each forum, each court's familiarity with the relevant law, the desirability of resolving controversies in each location,

and the relationship of each community to the controversy. "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id.*

## II.    DISCUSSION

Genzyme asks the Court to transfer this case to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). In its briefing, Genzyme notes that courts make a threshold determination of whether the action could have been brought in the proposed transferee court. *See Heckler & Koch, Inc. v. Tippman Sport, LLC*, 2009 WL 4907016, at *2 (S.D. Ind. Dec. 11, 2009). Then courts determine whether the balance of convenience and the interests of justice favor transfer. *See Research Automation*, 626 F.3d at 978. Genzyme argues that the "presence of ongoing or past litigation in the transferee court that is similar to the case at hand is one of the most significant factors when considering transfer." *Mooney v. Genzyme Corp.*, 2020 WL 3839904, at *2 (S.D. Ohio July 8, 2020).

Genzyme is a Massachusetts-domiciled corporation, and maintains that the bulk of the events giving rise to the claims asserted in the Plaintiffs' Second Amended Complaint occurred in Massachusetts. Thus, Genzyme argues, the threshold determination—whether the case could have been brought in the District of Massachusetts—is easily satisfied because "a substantial part of the events or omissions" occurred in Massachusetts. *See* 28 U.S.C. § 1391(b)(2) (explaining that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

The Plaintiffs acknowledge that the first step in the transfer analysis is met—the lawsuit could have been filed in the District of Massachusetts because Genzyme is incorporated there, and that court has jurisdiction under the Class Action Fairness Act as minimal diversity exists between

the Plaintiffs and Genzyme. The Court agrees with the parties that this action could have been brought in the District of Massachusetts, and thus, the threshold consideration for transfer is met.

Genzyme further argues that all of the remaining factors support transfer. The District of Massachusetts is the appropriate venue for addressing these claims because two prior actions in that district already have litigated substantially the same claims on behalf of the same plaintiffs. The allegations in the Second Amended Complaint confirm that this action is based in Massachusetts for transfer purposes: the allegedly material underlying events occurred in Massachusetts, many of the witnesses and evidence relating to those allegations are located in Massachusetts, and Genzyme is a Massachusetts-resident corporation. All of these factors overwhelmingly weigh in favor of transfer.

Genzyme asserts that "[w]here a party has previously litigated claims involving certain issues in one forum, as [plaintiff] has here, 'a court in that district will likely be familiar with the facts of the case. As a matter of judicial economy, such familiarity is highly desirable.'" *LG Elecs. Inc. v. Advance Creative Comput. Corp.*, 131 F. Supp. 2d 804, 815 (E.D. Va. 2001) (quoting *Wheeling-Pittsburgh Steel Corp. v. EPA*, 1999 WL 111459, at *4 (E.D. Pa. Mar. 3, 1999)). Federal courts have held that transfer is warranted where, as here, the transferee court has previously presided over closely related litigation between the same parties.

Genzyme points out that the twenty-six Plaintiffs in this case were all plaintiffs, or are relatives of plaintiffs, in one of two actions brought in the District of Massachusetts in 2011 and 2013: *Hochendoner v. Genzyme Corporation*, No. 1:11-cv-10739-DPW (D. Mass. Mar. 9, 2011), and *Adamo v. Genzyme Corporation*, No. 1:13-cv-11336 (D. Mass. June 3, 2013). The *Hochendoner* and *Adamo* complaints were based on allegations that manufacturing shortages at a Genzyme plant in 2009–2012 resulted in patients receiving insufficient quantities of a biologics

treatment, Fabrazyme, thereby causing plaintiffs to suffer injuries from the return of their disease symptoms. The complaints also alleged that plaintiffs had been injured by exposure to Fabrazyme that had been contaminated with a rare virus strand, Vesivirus 2117 ("Vesivirus"), or other contaminants. The two cases were consolidated, and the district court subsequently dismissed all of plaintiffs' claims for failure to state a claim upon which relief may be granted. *See Hochendoner v. Genzyme Corp.*, 95 F. Supp. 3d 15, 35 (D. Mass. 2015).

Genzyme further explains that the Court of Appeals for the First Circuit affirmed the dismissal as to all but one of the dozens of plaintiffs, holding that the plaintiffs lacked Article III standing to pursue their claims. *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 737 (1st Cir. 2016). Genzyme subsequently resolved the outstanding claims of the one plaintiff that had survived dismissal and at the same time reached a settlement with dozens of the other plaintiffs despite the fact that their claims had been dismissed.

The Plaintiffs in this case are those who did not participate in that earlier settlement with Genzyme. The Second Amended Complaint reasserts all of the same product liability claims that previously were dismissed in the District of Massachusetts and the First Circuit. Genzyme explains that, as before, the claims arise out of the same overarching allegations that, due to the product shortage, Plaintiffs received a reduced dose of Fabrazyme or that Plaintiffs' medication was contaminated.

Genzyme asserts that in 2019, two plaintiffs (apparent family members of one of the prior plaintiffs and also represented by the same counsel representing plaintiffs in the prior District of Massachusetts cases and in this case) filed yet another complaint against Genzyme. That case was filed in the Southern District of Ohio, alleging injuries from a Vesivirus contamination. *See Mooney v. Genzyme Corp.*, No. 1:19-cv-00791-MWM (S.D. Ohio Sept. 17, 2019). In that case,

Genzyme filed both a motion to dismiss and an alternative motion to transfer venue to the District of Massachusetts. The court granted Genzyme's motion to transfer on July 8, 2020. Plaintiffs then voluntarily dismissed the action on September 24, 2020.

At oral argument, Genzyme emphasized that when the Ohio district court transferred the *Mooney* case from Ohio to Massachusetts, the court acknowledged that the *Mooney* plaintiffs' claims were not identical to the claims in *Hochendoner* but explained that the facts in the case and *Hochendoner* were substantially similar—they centered around the drug Fabrazyme, its treatment of the rare Fabry disease, and the viral contamination of the drug and its effect on patients. The Ohio federal court's ruling emphasized that, due to the similarities, the District of Massachusetts had a unique familiarity not only with Genzyme but with the specific factual and legal issues that would be raised in the case.

Genzyme argues the *Mooney* court's reasoning applies all the more here because, in this case, all of the Plaintiffs (or their relatives) were plaintiffs in *Hochendoner* or *Adamo*, and they previously litigated claims involving the 2009–2012 Fabrazyme shortage in the District of Massachusetts. The Plaintiffs' Second Amended Complaint includes the same underlying allegations from the *Hochendoner* and *Adamo* complaints. The District of Massachusetts is thus familiar with the facts of the case, the history of litigation between the parties, and the legal issues presented. Judicial economy and the interests of justice would be best served by transferring this case to the District of Massachusetts, which has already dealt with the parties, facts, and legal issues in this case.

Furthermore, Genzyme asserts, transfer to Massachusetts is appropriate because the case involves allegations surrounding events occurring in Massachusetts as well as evidence and witnesses primarily based in Massachusetts, and it is centered on the actions of a Massachusetts-

domiciled corporation. Genzyme is located in Massachusetts, and the material underlying events—

the alleged Vesivirus contaminations, Fabrazyme shortage, and alleged misrepresentations—

occurred in Massachusetts. Genzyme's two Massachusetts-based plants discussed in the Second

Amended Complaint as well as many potential witnesses are located in Massachusetts. The

desirability to resolve the controversy in the locale and the relationship of the community to the

controversy favors transfer to Massachusetts.

Finally, Genzyme contends there is no compelling reason to litigate the action in Indiana.

The Plaintiffs are citizens of eleven different states with only four of the twenty-six Plaintiffs being

Indiana residents. The Plaintiffs' connection to Indiana is not great compared with the other states

of residency, and there are two Plaintiffs from Massachusetts. Genzyme concludes that all factors

point in favor of transferring the case to Massachusetts.

Responding in opposition to transferring the case, the Plaintiffs assert that most of the

witnesses and evidence related to Genzyme's fraudulent scheme are not located in Massachusetts.

The Plaintiffs argue that Genzyme has put forward only generic arguments that the tortious

conduct occurred where Genzyme is headquartered, but the reality is that witnesses are located all

over the country. The documentary evidence is in electronic format and already has been produced

in the case of *Schubert v. Genzyme Corporation, et al.*, a Utah case. The Plaintiffs argue that the

private and public interests do not favor transfer.

The Plaintiffs assert, "After establishing the existence of an adequate alternative forum, a

district court must determine whether it nevertheless should defer to the plaintiff's choice of forum.

Ordinarily, a strong presumption exists in favor of the plaintiff's choice of forum, which may be

overcome only when the private and public interest factors clearly point towards trial in the

alternative forum." *Roynat, Inc. v. Richmond Transp. Corp.*, 772 F. Supp. 417, 420 (S.D. Ind. 1991) (internal punctuation omitted).

The Plaintiffs argue that their choice of forum carries heavy weight, and Indiana is the state that has the most plaintiffs—three plaintiffs reside in Indiana (Genzyme stated four plaintiffs live in Indiana). They argue their case has a direct tie to Indiana as multiple Plaintiffs reside in Indiana, they communicated with Genzyme representatives in Indiana, and they ultimately were harmed in Indiana. Genzyme conducts significant business in Indiana, including marketing and selling its products and employing individuals to work with Fabry patients in Indiana. Lead Plaintiff Trina Wilkins lives in Indiana and was injured in Indiana. She received Genzyme's communications in Indiana. Many witnesses, such as Trina Wilkins's medical providers, are in Indiana, and other witnesses reside throughout the country and the world.

The Plaintiffs assert that, if this case is transferred, twenty-six Plaintiffs will be forced to litigate in a forum they did not choose, potentially retain new counsel, and incur exorbitant expenses—all for Genzyme's convenience. Genzyme has litigated cases in Utah, Colorado, Ohio, and Massachusetts related to the Fabrazyme shortage and contamination. This can be anticipated when a company markets and sells products all over the world.

The Plaintiffs further argue Genzyme's argument that the Massachusetts district court already has handled this matter is true but misleading. That case was filed and then dismissed without prejudice, with leave to refile, at the earliest stage. Thus, the district court in Massachusetts has almost no unique experience or understanding of this lawsuit. The Plaintiffs argue the court with the most knowledge of issues in the case is located in Utah where factual issues of the evidence were adjudicated in *Schubert v. Genzyme Corporation*. The Second Amended Complaint in this case recites the evidence verbatim from *Schubert*. The Plaintiffs argue they could see a

judicial efficiency argument for transferring the case to Utah with the same judge there, but there is no judicial efficiency in moving the case to Massachusetts. They argue there is nothing to be gained in terms of judicial efficiency by transferring this case to a district court that dismissed a similar case at the pleadings stage. They assert that no discovery was conducted (as was in Utah), and no substantive motions were decided in Massachusetts (as was done in Utah). The Plaintiffs assert the facts and context of the case have changed as they recently learned of Genzyme's intentional concealment and intentional misrepresentation of information, which is the key issue in this case, and which was disclosed in *Schubert v. Genzyme Corporation*, that low-dose Fabrazyme did not provide any medical benefit and actually likely harmed patients.

If the case is transferred to Massachusetts, Plaintiff's assert the case will be randomly assigned, so there is no guarantee that the judge familiar with the case will even handle this matter. They assert that the public interest factors favor keeping the case in Indiana. Indiana has a public interest in providing a forum for its citizens who have been injured.

Genzyme replies that the Plaintiffs ignore the broader context of the litigation, in which all of these same Plaintiffs or their relatives previously litigated many of these same claims in the District of Massachusetts in the *Hochendoner* and *Adamo* cases. The Plaintiffs litigated the *Hochendoner* and *Adamo* cases in the District of Massachusetts for more than five years, including two amended complaints. There, the court eventually issued a twenty page opinion dismissing their claims, and the First Circuit affirmed the dismissal. And even if the Plaintiffs' choices ruled the day, the Southern District of Indiana is not the only jurisdiction the Plaintiffs selected for these claims; it is only the most recent one.

Genzyme points out that a side-by-side comparison of the Second Amended Complaint in this action with the *Hochendoner* and *Adamo* complaints confirms the similarities between this

9

case and the prior actions litigated in the District of Massachusetts. Both actions include voluminous allegations and averments, but the substance of the claims is the same. Genzyme notes the Plaintiffs now say they recently have learned of Genzyme's intentional concealment and intentional misrepresentation of information. However, simply to insist that new, more specific averments somehow render this action different from the earlier claims overlooks the similarity of this action with the earlier actions: the same claims for relief, based on the same product defect and design claims, and injuries alleged based on the same alleged product shortage, caused by the same alleged events, render these actions largely identical. And allegations of concealment and misrepresentation were part of the *Hochendoner* and *Adamo* actions.

Genzyme contends that the Plaintiffs are incorrect in asserting this case would be randomly assigned to any judge's docket in Massachusetts because the related cases were dismissed more than two years ago. The *Adamo* case was closed on March 29, 2019—less than two years ago. Thus, this action would be assigned to the same judge who presided over the prior *Hochendoner* and *Adamo* cases. *See* Local Rule, D. Mass. 40.1(g)(4), (7) (related civil cases assigned to the same district judge unless more than two years have lapsed since the closing of the earlier case).

Genzyme argues if the Court adopts the Plaintiffs' assertion that the proper forum is where each Plaintiff lives, received communications, ingested Fabrazyme, and has a medical provider, then this case should have been brought in eleven different states. There is no reason for this case to be heard in Indiana as opposed to California, Florida, Massachusetts, Michigan, Nevada, North Carolina, Pennsylvania, Tennessee, Virginia, or Washington. Furthermore, Virginia, not Indiana, has the most Plaintiffs (six Plaintiffs reside in Virginia). And Indiana has no interest in resolving controversies involving the twenty-three plaintiffs who reside in ten different states and have no ties to Indiana. Genzyme points out that the Plaintiffs contend that the key issue in this case is

Genzyme's intentional concealment and intentional misrepresentation. But any alleged concealment and misrepresentation occurred in Massachusetts where Genzyme's management is located and where all of the relevant operations were located.

After careful consideration of the parties' arguments and the case law, the Court concludes that the factors of convenience and the interests of justice favor transferring this case to the District of Massachusetts. Genzyme's arguments and position are well-taken. The Plaintiffs are located in Massachusetts, Virginia, Indiana, and a number of other states spread across the country. Genzyme, like some of the Plaintiffs, is located in Massachusetts. Witnesses are spread across the country, but many of the witnesses with knowledge concerning Genzyme's conduct giving rise to the claims are located in Massachusetts. The location of material events is primarily in Massachusetts, with some events occurring in states across the country. Access to sources of proof and access to and distance from resources are close to neutral whether in Indiana or Massachusetts. These factors of "convenience" tend to favor venue in Massachusetts.

The factors of the "interests of justice" also favor venue in Massachusetts. The efficient administration of the court system, docket congestion, and likely speed to trial in each forum point to Massachusetts. The Southern District of Indiana is the second busiest federal district court in the country based on weighted case load per judge. The District of Massachusetts has seventeen district court judges and ten magistrate judges. The Southern District of Indiana has only six district court judges and seven magistrate judges. As of March 31, 2020, the District of Massachusetts had 3,685 pending civil cases whereas the Southern District of Indiana had 10,064 pending civil cases.[1]

During the oral argument for the Motion to Transfer, the Plaintiffs' counsel noted that they had considered filing in Massachusetts because they did not want to delay justice any further, and

---

[1] *See* https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2020/03/31 (last visited Dec. 29, 2020).

they further stated that this is a complicated case with a nine year history—an acknowledgement

that this case is the same case as the one filed in 2011 in Massachusetts. During oral argument,

they acknowledged that this case is the same as the Massachusetts cases with the same Plaintiffs

and same Defendant. And in their response brief, the Plaintiffs made this same acknowledgement:

> Genzyme Corporation makes reference to the First Circuit Court of Appeals
> affirming dismissal of Plaintiffs' claims. *See*, *Hochendoner v. Genzyme Corp.*, 823
> F.3d 724 (1st Cir. 2016). In fact, the Court of Appeals for the First Circuit affirmed
> the dismissal of Plaintiffs' claims on standing grounds, noting that the Plaintiffs
> needed to simply cure the pleading deficiency by citing the specific injuries
> sustained by each Plaintiff. . . . The Second Amended Complaint, now before this
> Honorable Court cures this pleading deficiency and alleges specific harms to each
> individual Plaintiff.

(Filing No. 71 at 2.)

According to the Local Rules of the District of Massachusetts, upon transfer, this case

would be assigned to the judge who previously handled the related cases of *Hochendoner* and

*Adamo*. Given that essentially this same case has been considered by the District of Massachusetts,

that district court's familiarity with the relevant law, claims, issues, and parties is superior to this

Court's familiarity with such. Judicial efficiency would be served by transferring this case.

### III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Genzyme's Motion to Transfer Venue

(Filing No. 68), and this case shall be transferred to the District of Massachusetts. The Clerk is

**directed to transfer** this matter to the United States District Court for the District of Massachusetts

and **close** the matter on this Court's docket.

**SO ORDERED.**

Date:   12/30/2020

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

12

13

Distribution:

Nicholas Blake Alford
FAEGRE DRINKER BIDDLE & REATH
Nicholas.Alford@faegredrinker.com

Charles Allen Black, Jr.
LAW OFFICE OF C. ALLEN BLACK, JR.
allenblack@sunpillar.com

Deena J.G. Feit
ROPES & GRAY LLP
deena.feit@ropesgray.com

Jonathan M. Gesk
GESK MORITZ, LLC
jgesk@gesklaw.com

Robert G. Jones
ROPES & GRAY LLP
robert.jones@ropesgray.com

Gregory F. Malloy
ROPES & GRAY LLP
gregory.malloy@ropesgray.com

Andrea Roberts Pierson
FAEGRE DRINKER BIDDLE & REATH
andrea.pierson@faegredrinker.com

Renee T. Whyte
ROPES & GRAY LLP
renee.whyte@ropesgray.com