## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

TRINA WILKINS; JAMES BISHOP; LISA
BISHOP; AMBER BRITTON; TONI
CORDOVA; JOHN CORTINA; JILL
CORTINA; GEORGE DEMKO; DONOVAN
HELTON; MARY HELTON;
NATE BROOKS; SYDNEY JOHNSON;
PLAINTIFF D.J.; DAMON LAFORCE;
MICHAEL MASULA; ERIN MASULA;
JAMES MATTHEWS; THOMAS
OLSZEWSKI; DARLENE COOKINGHAM;
THOMAS STANZIANO; WENDY
STANZIANO; EDDIE VIERS, individually as
surviving spouse of Teresa Viers, deceased,
AND as Personal Representative of the
ESTATE OF TERESA VIERS; WILLIAM
MCNEW; JEANNE WALLACE individually
as surviving spouse of Joseph Wallace,
deceased, AND as Personal Representative of
the ESTATE OF JOSEPH WALLACE;
JAMES WALLACE; and SAMUEL
WALLACE;

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No: 1:21 – cv – 10023 – RGS

Honorable Judge Richard G. Stearns

Plaintiffs,

v.

GENZYME CORPORATION,

Defendant.

## DEFENDANT GENZYME CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND .......................................................................................... 1

    A.    Fabrazyme and the Treatment of Fabry Disease.................................. 1

    B.    2009 Fabrazyme Shortage.................................................................... 1

    C.    The Prior *Hochendoner* and *Adamo* Actions ........................................ 3

    D.    The Present Action............................................................................... 4

ARGUMENT .............................................................................................. 7

I.     THE VAST MAJORITY OF THE REMAINING CLAIMS ARE TIME
      BARRED ............................................................................................... 9

    A.    The First Circuit's Guidance on the Statute of Limitations Justifies
         Dismissal of Most of the Plaintiffs' Claims........................................ 9

    B.    Most of Minor Plaintiff D.J.'s Claims Are Untimely ......................... 13

    C.    The Wallace Plaintiffs' Wrongful Death Claim Should be Dismissed
         Under the Statute of Limitation Based on Insufficient Pleading ......... 15

II.    D.J. FAILS TO STATE A CLAIM UNDER VIRGINIA'S CONSUMER
      PROTECTION ACT AND FALSE ADVERTISING LAWS ....................... 15

III.   THE VIRGINIA WRONGFUL DEATH CLAIMS FAIL TO STATE A CLAIM.......... 18

CONCLUSION............................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Allergan USA, Inc.*,
No. 12-cv-115, 2012 WL 3692396 (E.D. Va. Aug. 23, 2012) .........................................16, 18

*Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*,
374 F.3d 23 (1st Cir. 2004)...............................................................................................8

*American Pipe & Const. Co. v. Utah*,
414 U.S. 538 (1974)..................................................................................6, 10, 12, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................7

*Ball v. Takeda Pharms. Am., Inc.*,
963 F. Supp. 2d 497 (E.D. Va. 2013) ..................................................................................16

*Campbell v. Harmon*,
628 S.E.2d 308 (Va. 2006)...............................................................................................20

*In re Colonial Mortg. Bankers Corp.*,
324 F.3d 12 (1st Cir. 2003)............................................................................................7, 8

*Grady v. Blackwell*,
902 S.E.2d 64 (Va. Ct. App. 2024)....................................................................................20

*Hochendoner v. Genzyme Corp.*,
823 F.3d 724 (1st Cir. 2016)................................................................................................4

*Hochendoner v. Genzyme Corp.*,
95 F. Supp. 3d 15 (D. Mass. 2015) .....................................................................................3

*Klein v. Bayer Healthcare Pharms. Inc.*,
No. 2:18-cv-01424, 2019 WL 3945652 (D. Nev. Aug. 21, 2019)....................................17, 18

*North Am. Cath. Educ. Programming Found., Inc. v. Cardinale*,
567 F.3d 8 (1st Cir. 2009)...................................................................................................8

*Orr v. Turco Mfg. Co.*,
484 N.E.2d 1300 (Ind. Ct. App. 1985).................................................................................14

*Persaud Cos. v. IBCS Grp., Inc.*,
425 F. App'x 223 (4th Cir. 2011) ........................................................................................16

*Tarbrake v. Sharp*,
    894 F. Supp. 270 (E.D. Va. 1995) ...................................................................18

*Utts v. Bristol-Myers Squibb Co.*,
    251 F. Supp. 3d 644 (S.D.N.Y. 2017)..............................................................17

*Wilkins v. Genzyme*,
    No. 24-165, 2024 WL 4427245 (U.S. Oct. 7, 2024)...........................................7

**Statutes**

21 C.F.R. § 314.70(c)(6)(iii) ................................................................................17

Fed. R. Civ. P. 9(b) ...............................................................................................8

Ind. Code § 34-11-6-1 ..........................................................................................14

Ind. Code § 34-20-3-1 ..........................................................................................14

Va. Code Ann. § 8.01-50(C) .................................................................................20

Va. Code Ann. § 8.01-244 ....................................................................................15

Va. Code Ann. § 18.2-216 ...............................................................................16, 17

Va. Code Ann. § 59.1-68.3 ..............................................................................16, 17

Va. Code Ann. § 59.1-199(1) ................................................................................16

Va. Code Ann. § 59.1-200(A)(5) ..........................................................................16

Va. Code Ann. § 59.1-200(A)(14) ........................................................................16

## PRELIMINARY STATEMENT

Twenty-six named Plaintiffs filed this action. The First Circuit has affirmed the District Court's dismissal of the claims of four of the named Plaintiffs, while providing a helpful roadmap for this Court on how to apply the statutes of limitations to the remaining Plaintiffs' claims. Under the First Circuit's guidance, it is clear that almost all of the Plaintiffs' claims in this action are time barred and cannot be saved by any tolling arguments. Furthermore, the remaining Plaintiffs' claims that are not time-barred fare no better: each of those claims—whether brought under Virginia's Wrongful Death Statute, Survival Action Statute, Consumer Protection Act, or false advertising laws—fail as a matter of law. For these reasons, the remaining Plaintiffs' claims should be dismissed with prejudice.

## BACKGROUND

### A. Fabrazyme and the Treatment of Fabry Disease

Genzyme Corporation develops products to treat rare diseases and other serious conditions. Fabrazyme is a biological product developed by Genzyme to treat patients with Fabry disease. *See* Second Amended Compl. ("SAC") ¶ 33, ECF No. 67. Fabry disease is a rare genetic disorder that, without treatment, results in complications such as renal disease, cardiac disease, disease of the central nervous system, strokes, kidney failure, heart enlargement, and premature death. *Id.* ¶¶ 31–32. There is no cure for Fabry disease, but Fabrazyme can be used by patients to mitigate, not reverse, the effects of Fabry disease. *Id.* ¶¶ 33, 35. In 2003, Genzyme received approval from the FDA to market Fabrazyme to treat Fabry disease, and until recently, Fabrazyme was the only FDA-approved treatment for Fabry disease in the United States. *Id.* ¶ 41.

### B. 2009 Fabrazyme Shortage

More than a decade ago, in June 2009, Genzyme identified a Vesivirus in one of its non-Fabrazyme bioreactors in its Allston facility. *Id.* ¶ 162. Upon making this discovery, Genzyme

notified Fabrazyme patients, including Plaintiffs, that it had identified a Vesivirus in its bioreactors. *See id.* ¶ 53. Although Genzyme did not detect any Vesivirus in its Fabrazyme bioreactors, out of an abundance of caution, Genzyme suspended bulk production of Fabrazyme in order to do a complete sanitization of the entire Allston facility. *See id.* ¶ 163. This suspension of Fabrazyme production resulted in a supply shortage.

In order to manage the shortage in a way that would provide the best outcome for Fabry patients, Genzyme convened a panel of physicians specializing in Fabry disease, leaders of the two largest Fabry patient groups in the United States, and Genzyme representatives. *Id.* ¶ 221. This panel recommended that patients take a reduced dose of Fabrazyme during the shortage. *Id.* ¶ 230. Throughout the shortage, Genzyme continued to ship Fabrazyme in the same standard, FDA-approved vials and it was ultimately left up to the patient and their treating physician to decide how best to administer a reduced dose of Fabrazyme. *See id.* ¶ 89. Further, throughout the shortage, Genzyme provided periodic updates to patients regarding its efforts to end the shortage. *Id.* ¶¶ 207, 234.

Despite its best efforts to quickly end the shortage and restore a full supply of Fabrazyme to its patients, Genzyme's production of Fabrazyme was again halted in November 2009 after a batch of Fabrazyme at the Allston facility was found to have contained particulates. *Id.* ¶¶ 169–170. The identification of particulates in batches of Fabrazyme at the Allston facility resulted in the FDA entering into a public consent decree with Genzyme in May 2010, as part of which Genzyme agreed to increased oversight of manufacturing at the facility. *Id.* ¶ 62. Additionally, once Genzyme again resumed production, bioreactor productivity for Fabrazyme remained low. As a result, the Fabrazyme shortage lasted longer than Genzyme anticipated, but by March 2012, all Fabrazyme patients were restored to a full dose of Fabrazyme. *See id.* ¶ 131.

## C. The Prior *Hochendoner* and *Adamo* Actions

Plaintiffs have been attempting to bring claims against Genzyme for the Fabrazyme shortage for over a decade. Starting in March 2011, Plaintiffs Amber Britton, George Demko, Michael Masula, Erin Masula, Thomas Olszewski, Darlene Cookingham, Thomas Stanziano, and Wendy Stanziano were among the twenty plaintiffs who filed the *Hochendoner* action in the U.S. District Court for the Western District of Pennsylvania on March 9, 2011. *See* Compl., *Hochendoner v. Genzyme Corp.*, No. 2:11-cv-00313 (W.D. Pa. Mar. 9, 2011), ECF No. 1. On April 29, 2011, the *Hochendoner* action was transferred to this Court. Order of Court, *id.*, ECF No. 14. Approximately two years later, Plaintiffs Trina Wilkins, James Bishop, Lisa Bishop, Toni Cordova, John Cortina, Jill Cortina, Mary Helton, Donovan Helton, D.J., Sydney Johnson, Damon LaForce, James Matthews, Eddie Viers, and Jeanne Wallace were among the eighty-seven plaintiffs who filed the *Adamo* action in this Court on June 3, 2013. *See* Compl., *Adamo v. Genzyme Corp.*, No. 1:13-cv-11336 (D. Mass. June 3, 2013), ECF No. 1. Plaintiffs William McNew, James Wallace, Samuel Wallace, and Nate Brooks are all relatives of plaintiffs from the *Adamo* action. SAC ¶¶ 10, 23, 25–26.

Both the *Hochendoner* and *Adamo* actions brought putative class claims on behalf of all Fabry patients in the United States based on allegations that they were injured from receiving a low dose of Fabrazyme during the shortage. *See* Amended Compl., *Hochendoner*, No. 2:11-cv-00313, ECF No. 11; Amended Compl., *Adamo*, No. 1:13-cv-11336, ECF No. 11. The plaintiffs in *Adamo* further alleged injuries from receiving Fabrazyme contaminated with Vesivirus. *Id.* Given that the *Hochendoner* and *Adamo* actions asserted substantively identical allegations, the District Court consolidated the actions before granting Genzyme's motion to dismiss for failure to state a claim upon which relief may be granted. *Hochendoner v. Genzyme Corp.*, 95 F. Supp. 3d 15, 21, 35 (D. Mass. 2015) (Woodlock, J.). Plaintiffs appealed the District Court's dismissal to the First

Circuit. On appeal, the First Circuit affirmed dismissal as to all but one plaintiff—James Mooney, who is not a plaintiff in this instant action—on standing grounds finding that plaintiffs had failed to adequately plead an injury in fact traceable to Genzyme's alleged conduct. *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 737 (1st Cir. 2016). Consequently, on June 28, 2016, all *Hochendoner* and *Adamo* plaintiffs' claims were dismissed, except that of Mr. Mooney's. *See* Judgment of Dismissal, *Hochendoner v. Genzyme Corp.*, No. 1:11-cv-10739 (D. Mass. June 28, 2016), ECF No. 83.

Approximately two months after the dismissal of these claims, several of the *Hochendoner* and *Adamo* plaintiffs, including some whose claims were previously dismissed, reached an agreement in principle to settle their claims. To facilitate finalizing the settlement, the parties entered into a tolling agreement effective May 17, 2017 (the "Tolling Agreement") pursuant to which the parties agreed to toll "[a]ny applicable statutes of limitations pertaining to any matters asserted" in the *Hochendoner* and *Adamo* actions. Ex. A, Pls.' Mot. for Leave to File Third Am. Compl., ECF No. 105-1. The parties then spent two years determining the appropriate method for allocating payments, after which the Court closed the case in March 2019. *See* Order, *Adamo*, No. 1:13-cv-11336, ECF No. 96. Plaintiffs in the present action are former *Hochendoner* and *Adamo* plaintiffs, or their relatives, who were unable to settle their claims. Genzyme notified Plaintiffs that the Tolling Agreement would terminate on February 29, 2020.

### D. The Present Action

On February 29, 2020, almost four years after the First Circuit dismissed the consolidated *Hochendoner* and *Adamo* actions, Plaintiffs filed the present action in the U.S. District Court for the Southern District of Indiana. *See* Compl., ECF No. 1. It was transferred back to the District of Massachusetts upon Defendant's motion. *See* Order Granting Def.'s Mot. to Transfer Venue, ECF No. 78. Plaintiffs reassert the same allegations that they made in the prior *Hochendoner* and

*Adamo* actions, alleging that they were injured by taking low dose Fabrazyme during the shortage. SAC ¶ 347. They also allege, again without any support, that they were injured from taking Fabrazyme that was adulterated with Vesivirus, glass, rubber, and steel particulates. *Id.* ¶ 106. However, in the present action, in addition to bringing claims such as negligence, negligence per se, strict liability, breach of warranty, loss of consortium, and certain statutory claims as they did in the *Hochendoner* and *Adamo* actions, Plaintiffs also brought a slew of new causes of action, including wrongful death/survival, fraud, fraudulent concealment, breach of fiduciary duty, and unjust enrichment.[1]

On July 9, 2021, Genzyme filed a motion to dismiss Plaintiffs' claims, which the District Court granted on September 14, 2022. *See* Mem. & Order at 83, ECF No. 117. In granting the motion, the Court dismissed the claims of all but four Plaintiffs (Trina Wilkins, Damon LaForce, Thomas Stanziano, and Wendy Stanziano) without prejudice for failure to establish Article III standing. *Id.* at 52–56. The District Court found that these four Plaintiffs, who alleged that they suffered an anaphylactic reaction after returning to a full dose of Fabrazyme, had sufficiently alleged an injury-in-fact that was attributable to Genzyme's conduct. *Id.* The Court held that the remaining twenty-two Plaintiffs, who only alleged injuries from taking contaminated Fabrazyme, acceleration of their disease's progression from taking low-dose Fabrazyme, financial harm from paying for defective Fabrazyme, or decreased life expectancy from taking defective Fabrazyme, failed to establish the requirements for standing. *Id.* The District Court then looked at the individual claims of the four Plaintiffs who alleged sensitization injuries and dismissed those claims with prejudice for failure to state a claim. *Id.* at 57–82.

---

[1] In the SAC, Plaintiffs also alleged for the first time that they were harmed by a purported Vesivrus contamination at Genzyme's Framingham facility in 2013 and 2015, however, Plaintiffs have since abandoned those claims. *See* Mem. & Order at 19 n.8 (stating that Plaintiffs "abandoned" the claims concerning the Framingham plant), ECF No. 117.

In its opinion, the District Court also addressed the relevant statutes of limitations applicable to each Plaintiff's claim and concluded that every claim, other than a wrongful death claim, had expired prior to the signing of the Tolling Agreement. *Id.* at 20–35. However, despite finding that Plaintiffs' claims expired before the Tolling Agreement was signed and that *American Pipe* tolling did not save Plaintiffs' claims, the District Court found that by entering into the Tolling Agreement the parties agreed to revive the claims made by Plaintiffs in the *Hochendoner* and *Adamo* actions with the goal of settling them. *Id.* at 35–42. The District Court left open the question of which claims were actually revived by the Tolling Agreement. *Id.* at 41–42. It also left open whether any of Plaintiffs' claims were saved by the Indiana Journey's Account Statute. *Id.* at 42–47.

On October 13, 2022, Plaintiffs appealed the District Court's granting of Genzyme's motion to dismiss. Notice of Appeal, ECF No. 119. The First Circuit found that unlike plaintiffs in *Hochendoner* and *Adamo* actions, the *Wilkins* Plaintiffs had established that they have standing. Opinion of U.S. Court of Appeals ("Opinion") at 12–16, ECF No. 124. However, the First Circuit affirmed the dismissal with prejudice of the four sensitization Plaintiffs, finding that their claims were nonetheless time barred. *Id.* at 29. The First Circuit—accepting as true the District Court's finding that absent any tolling all claims except for the sensitization and fraud claims would have expired by the end of 2011, the fraud claims by March 2013, and the sensitization claims by the end of 2014—found that the former *Hochendoner* Plaintiffs' (Thomas and Wendy Stanziano) claims were timely when filed. *Id.* at 20–21. However, given that more than two years had passed since the dismissal of the *Hochendoner* action, the present action was untimely as to the former *Hochendoner* Plaintiffs absent any tolling. *See id.* With respect to the former *Adamo* Plaintiffs (Trina Wilkins and Damon LaForce), the First Circuit found that the claims of all plaintiffs who

did not allege sensitization injuries in *Adamo* were untimely—in other words, only the sensitization claim of Mr. Mooney, who is not a plaintiff in this action, was timely when brought. *See id.* The First Circuit then concluded that neither *America Pipe* tolling, the Indiana Journey's Account Statute, nor the Tolling Agreement saved Plaintiffs' claims. *Id.* at 22–28. With this clear roadmap detailing how the statutes of limitations should be applied to this case, the First Circuit remanded the case back to this Court to decide whether any of the remaining Plaintiffs' claims were timely and whether their claims could survive dismissal under Rule 12(b)(6). *Id.* at 29.

Apparently recognizing that the First Circuit's analysis would result in almost all of their claims being dismissed on statute of limitations grounds, Plaintiffs sought reconsideration of the First Circuit's decision by filing a petition for rehearing en banc. *See* Appellants' Pet. For Rehr'g En Banc, *Wilkins v. Genzyme*, No. 22-1782 (1st Cir. Feb. 29, 2024). The First Circuit denied the petition on May 15, 2024. Order, *Wilkins*, No. 22-1782. Plaintiffs then filed a petition for a writ of certiorari with the United States Supreme Court on August 15, 2024, which the Supreme Court denied on October 7, 2024. *See Wilkins v. Genzyme*, No. 24-165, 2024 WL 4427245, at *1 (U.S. Oct. 7, 2024). This renewed motion to dismiss follows.

## ARGUMENT

In order to survive a motion to dismiss, Plaintiffs' "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court accepts all factual allegations as true and draws reasonable inferences in Plaintiffs' favor, it is not bound to accept as true "bald assertions, unsupportable conclusions, and opprobrious epithets." *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003) (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)).

In addition, since Plaintiffs have alleged that Genzyme committed fraud, they must meet Rule 9(b)'s heightened pleading standards. *See N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13, 15 (1st Cir. 2009). Courts read "Rule 9(b) expansively to cover associated claims where the core allegations effectively charge fraud." *Id.* at 15. To satisfy Rule 9(b), Plaintiffs must "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), including "the who, what, where, and when of the allegedly false or fraudulent representation." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).

In deciding whether to grant a motion to dismiss, it is appropriate for the Court to consider an affirmative defense, such as a statute of limitations defense. *See In re Colonial*, 324 F.3d at 16. In order for a defense to succeed at this stage, (i) it "must be definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice"; and (ii) "the facts so gleaned must conclusively establish the affirmative defense." *Id.*

Genzyme brings this renewed motion to dismiss seeking dismissal of all the remaining claims in this case. In light of the First Circuit's analysis of the relevant statute of limitations and tolling arguments, it is clear that all but a handful of claims are definitively time barred and should be dismissed. As for the few claims that are not time barred—*i.e.*, Plaintiff D.J.'s statutory claims and the Teresa Viers wrongful death claim—they should also be dismissed for failure to state a claim. The statutory claims fail because (i) the relevant statutes exclude claims based on warnings made about pharmaceutical drugs and (ii) Plaintiffs failed to allege with particularity the supposed fraud Genzyme committed. The wrongful death claims can be dismissed because of various pleading deficiencies and legal impediments or, at the very least, should be narrowed to the proper, legally authorized scope.

# I.    THE VAST MAJORITY OF THE REMAINING CLAIMS ARE TIME BARRED

## A.    The First Circuit's Guidance on the Statute of Limitations Justifies Dismissal of Most of the Plaintiffs' Claims

For most of the remaining Plaintiffs' claims, this Court should dismiss them with prejudice by simply following the First Circuit's guidance about the statute of limitations. Specifically, the First Circuit's analysis applies in a straightforward manner to Plaintiffs James Bishop, Lisa Bishop, Amber Britton, Toni Cordova, John Cortina, Jill Cortina, George Demko, Donovan Helton, Mary Helton, Nate Brooks, Sydney Johnson, Michael Masula, Erin Masula, James Matthews, Thomas Olszewski, and Darlene Cookingham.[2] Each of these Plaintiffs' claims mirror the claims that the First Circuit concluded were untimely and should therefore be dismissed with prejudice.

Beginning with the First Circuit's analysis, it considered whether to affirm the District Court's dismissal with prejudice of Trina Wilkins, Damon LaForce, Thomas Stanziano, and Wendy Stanziano. *See* Opinion at 20. The First Circuit first confirmed some preliminary findings about the various claims' expiration dates. *Id.* at 20–21. It noted that the parties did not dispute the District Court's conclusions that, absent tolling, (i) the low-dose/contamination claims expired no later than the end of 2011, (ii) the fraud claims expired no later than March 2013, and (iii) the sensitization claims expired by the end of 2014. *Id.* at 20–21; *see* Mem. & Order at 32–33. In addition, the First Circuit noted that the claims of the two former *Hochendoner* Plaintiffs, Thomas and Wendy Stanziano, were timely when they were filed in that action in March 2011. Opinion at

---

[2] Genzyme notes that Plaintiffs Donovan Helton and Sydney Johnson were adults when the present case was filed but were minors when they originally filed suit against Genzyme in *Adamo*. *See* Compl. ¶¶ 33, 45, *Adamo*, No. 13-cv-11336, ECF No. 1. In Plaintiffs' past briefing, they mentioned—without explanation—that this Court "ignore[d] the pleading age of minority" for Helton, Johnson, and minor Plaintiff D.J. Br. of Appellants at 42 n.16, *Wilkins*, No. 22-1782. However, Plaintiffs have only specifically argued that the statute of limitations is tolled until D.J. reaches majority. *Compare* Pls.' Opp'n to Def.'s Mot. to Dismiss at 50 (D.J), *with id.* at 47–49 (Donovan Helton and Sydney Johnson), ECF No. 108. Therefore, since (i) Helton and Johnson are currently adults and (ii) Plaintiffs' allegations do not distinguish Helton and Johnson from the remaining adult Plaintiffs, Genzyme treats Helton's and Johnson's claims similarly to the other adult Plaintiffs.

21.  But the present action, which was filed well after the applicable limitations period expired, was untimely absent tolling.  *See id.*  Furthermore, the claims of the two former *Adamo* Plaintiffs, Trina Wilkins and Damon LaForce, were untimely when filed unless they could benefit from tolling.  *Id.*  This was because Wilkins and LaForce filed their *Adamo* claims in June 2013, which was after the low-dose/contamination and fraud claims expired, and they did not allege claims based on sensitization injuries.  *Id.*

The First Circuit next considered and rejected Plaintiffs' tolling arguments based on *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the Indiana Journey's Account Statute, and the parties' May 2017 Tolling Agreement.  Opinion at 22–28.  Regarding *American Pipe* tolling, the First Circuit concluded that the doctrine did not apply to this case because (i) *American Pipe* involves saving a *federal* cause of action and (ii) there is no *American Pipe* analogue under Indiana law that would save Plaintiffs' state law claims.  *Id.* at 22–23.  Accordingly, the First Circuit held that "plaintiffs lack any basis for claiming that the *Hochendoner* complaint tolled the running of the limitations period for members of the putative class who waited until after the limitations period expired to sue in *Adamo*."  *Id.* at 23.  That meant that the claims of the two former *Adamo* Plaintiffs (Wilkins and LaForce) were untimely when originally filed in 2013.  *Id.*

Turning to the Indiana Journey's Account Statute, the First Circuit explained how the two former *Hochendoner* Plaintiffs (Thomas and Wendy Stanziano) sought to benefit from the statute's three-year refiling window by arguing that this case was merely a "continuation" of the prior *Hochendoner* case.  *Id.* at 23–25.  The First Court rejected this argument because the Stanzianos' newly filed claims "pivot on highly material allegations of individual injuries and causation that

they did not allege in *Hochendoner*." *Id.* at 25–26. Thus, the Indiana Journey's Account Statute did not apply to their claims. *Id.* at 27.

Finally, the First Circuit considered the parties' May 2017 Tolling Agreement and whether, as the District Court's originally concluded, the Agreement revived Plaintiffs' expired claims. *Id.* at 27. The First Circuit overturned the District Court's determination, concluding that "the agreement did not revive claims for which the limitations period had expired before the parties signed the Tolling Agreement." *Id.* Specifically, the Agreement's language did not supersede or override Genzyme's ability to raise a statute of limitations defense based on the passage of time *prior* to the parties' signing the Tolling Agreement. *Id.* at 28. Therefore, the claims of all four Plaintiffs (Wilkins, LaForce, and the Stanzianos) did not survive Genzyme's statute of limitations defense because the time to file suit expired before the Tolling Agreement was executed. *Id.* In summary, the First Circuit wrote that the four Plaintiffs "claims are time-barred because they were either untimely when first filed or rely on material new facts rendering the Journey's Account Statute inapplicable, and because the Tolling Agreement did not revive any otherwise expired claims." *Id.* at 29.

Turning back to the remaining twenty-two Plaintiffs at issue in this motion, the Court should apply the First Circuit's statute of limitations analysis in a straight-forward manner to most of the remaining claims and dismiss them with prejudice. Indeed, the First Circuit seemed to recognize this was an appropriate next step, writing that it had made "a series of subsidiary findings" on Plaintiffs' tolling arguments "that will guide the district court's treatment of the claims advanced by the remaining twenty-two plaintiffs." *Id.* at 4. It is clear the First Circuit's analysis applies in equal force to the remaining Plaintiffs because, like Wilkins, LaForce, and the Stanzianos, the remaining Plaintiffs were prior plaintiffs in *Hochendoner* or *Adamo* (or were their

family members). Additionally, the remaining Plaintiffs assert substantively similar—and largely verbatim—individual allegations as Wilkins, LaForce, and the Stanzianos, except that the remaining Plaintiffs do not allege sensitization injuries. *Compare, e.g.*, SAC ¶ 1 (Wilkins), *with* SAC ¶ 2 (Bishop).[3] Therefore, at least as it relates to the common law claims—*i.e.*, negligence, negligence per se, strict liability, breach of warranty, fraud, fraudulent concealment, breach of fiduciary duty, unjust enrichment, and loss of consortium—the First Circuit's findings about the claim's expiration and the unavailability of tolling would apply. Since the remaining Plaintiffs' low-dose/contamination claims expired no later than the end of 2011 and their fraud claims expired no later than March 2013, their common law claims are untimely and should be dismissed. And, as the First Circuit held, neither *American Pipe*, the Indiana Journey's Account Statute, or the Tolling Agreement saves Plaintiffs' time-barred claims.

In addition to the common law claims, which can be easily disposed of given the one-for-one overlap with the claims of Wilkins, LaForce, and the Stanzianos, the remaining Plaintiffs' statutory claims can be dismissed for similar reasons.[4] For Plaintiffs Mary Helton, Donovan Helton, and Sydney Johnson, their Indiana and Virginia statutory claims can be readily dismissed because they are the same as Wilkins' and LaForce's time-barred statutory claims. *See* SAC ¶¶ 369–374, 412–419. As for the other remaining Plaintiffs, including James Bishop, Amber

---

[3] Two remaining Plaintiffs, Toni Cordova and Amber Britton, allege that they began taking reduced doses of Fabrazyme in 2010 and 2011, rather than 2009 like the rest of the Plaintiffs. SAC ¶¶ 4–5. However, this only means that their low-dose/contamination-based claims expired by 2012 and 2013, respectively, and are still untimely.

[4] In its original ruling, this Court explained that, under Indiana law, "[f]or statutory claims arising under the law of another state, that state's relevant statute of limitations applies." Mem. & Order at 21. However, it also recognized an exception to this rule: "If the statutory claim originated at common law, then Indiana's statute of limitations still apply." *Id.* Ultimately, for Plaintiffs' various state statutory claims, this Court concluded that it was "unnecessary to scrutinize whether Indiana courts would identify these claims as originating separately at common law, because the claims in all events have expired for purposes of Indiana law or the law of the other states." *Id.* at 25. Although Genzyme believes Indiana's two-year products liability statute applies to the statutory claims because they originate at common law, it is unnecessary to decide this question because the claims are untimely under either approach.

Britton, Toni Cordova, George Demko, Michael Masula, James Matthews, and Thomas Olszewski, they brought various statutory claims under Massachusetts, Michigan, Nevada, North Carolina, Pennsylvania, and Washington law. The District Court previously analyzed the statute of limitations for those claims and concluded that, absent tolling, they expired by March 2017 at the latest—*two months prior to the May 2017 Tolling Agreement*. Mem & Order at 25–26, 33–34. Since these claims expired prior to the Tolling Agreement, the First Circuit's analysis continues to hold true: they are not federal causes of action and cannot benefit from *American Pipe* tolling; there is no *American Pipe* analogue in Indiana; the Journey's Account Statute would not treat these claims as a "continuation" of *Hochendoner* or *Adamo* because they rely on new allegations; and the Tolling Agreement does not revive these claims. Although the First Circuit's tolling analysis did not *specifically* relate to these other statutory claims, they should still be treated the exact same as the statutory claims brought by Wilkins, LaForce, and the Stanzianos.

Accordingly, except for the one-off circumstances discussed below, all the remaining Plaintiffs' common law and statutory claims are untimely, cannot be saved by tolling, and should be dismissed with prejudice.

### B. Most of Minor Plaintiff D.J.'s Claims Are Untimely

One set of claims that does not fit neatly into the First Circuit's statute of limitations analysis are those brought by D.J., a minor Plaintiff who resides in Virginia. Plaintiffs argued in their opposition to Genzyme's original motion to dismiss that D.J. benefits from a Virginia tolling provision for minors. *See* Pls.' Opp'n to Def.'s Mot. to Dismiss at 50, ECF No. 108. While it may be true that D.J.'s two Virginia statutory claims can benefit from such a tolling mechanism, his common law claims are still untimely.

This is because the District Court previously concluded that Indiana's two-year products liability statute of limitations governed Plaintiffs' common law claims. *See* Mem. & Order at 21–

24.  That statute of limitations requires that a product liability action must be brought "within two (2) years after the cause of action accrues," and the limitations period "*applies to all persons regardless of minority or legal disability*."  Ind. Code § 34-20-3-1 (emphasis added).  The statute further notes that the limitations period applies "[n]otwithstanding [Ind. Code §] 34-11-6-1," *id.*, which is a separate Indiana statute that would otherwise grant a minor two years to file a claim once they become an adult, *see* Ind. Code § 34-11-6-1 ("A person who is under legal disabilities when the cause of action accrues may bring the action within two (2) years after the disability is removed.").  Thus, it is clear that "there is no exemption from the product liability statute of limitations in Indiana for either minority or legal disability."  *Orr v. Turco Mfg. Co.*, 484 N.E.2d 1300, 1302 (Ind. Ct. App. 1985) (interpreting an earlier version of the statute).  And because this "is the mandate of [Indiana's] state Legislature," courts "are bound by the[] enactment."  *Id.* Therefore, regardless of D.J.'s status as a minor, his common law claims, like the other remaining Plaintiffs' claims, are untimely under Indiana's two-year products liability statute of limitations and should be dismissed.

Any attempt by Plaintiffs to argue that Indiana's statute of limitations should not apply to D.J.'s common law claims would be misguided.  This Court properly assessed the choice of law issues and reached the correct result about which statute of limitations apply to Plaintiffs' claims.  As the Court explained, since this case was originally filed in the Southern District of Indiana before being transferred to the District of Massachusetts, Indiana's statutes of limitations would govern.  Mem. & Order at 16, 20–21.  The Court also correctly determined that, under Indiana law, the two-year product liability statute of limitations applies to claims that either "arise[] from the Indiana Products Liability Act" or that are subsumed by the act because the nature and substance of the claims are that of products liability.  *Id.* at 20–25.  And as the Court found, all of

Plaintiffs' common law claims, including those of D.J's, are subsumed by the Indiana Products Liability Act. *Id.* at 21. These determinations about the applicable statute of limitations hold true no matter if D.J. is a minor, and they are simply a consequence of where Plaintiffs chose to file their case.

### C. The Wallace Plaintiffs' Wrongful Death Claim Should be Dismissed Under the Statute of Limitation Based on Insufficient Pleading

The other claim that does not fit into the First Circuit's statute of limitations analysis is the wrongful death claim brought by the family and estate of Joseph Wallace. Claims brought under Virginia's wrongful death statute must be filed within two years of the decedent's death. Va. Code Ann. § 8.01-244. But as this Court explained, "[t]here is no information about when Ms. Wallace's husband Joesph Wallace died" and therefore "the complaint is insufficient as to Ms. Wallace's claim." Mem. & Order at 34–35. Upon this renewed motion to dismiss, the Court should adopt this previous determination and dismiss the Wallace's claims as insufficiently pled.

\* \* \*

Based on the forgoing, all of the remaining Plaintiffs' claims are barred by the statute of limitations, except for (i) D.J.'s claims based on alleged violations of the Virginia Consumer Protection Act and Virginia's false advertising laws; and (ii) the Virginia wrongful death claim brought by Teresa Viers' family and estate.

## II. D.J. FAILS TO STATE A CLAIM UNDER VIRGINIA'S CONSUMER PROTECTION ACT AND FALSE ADVERTISING LAWS

Turning to the D.J.'s statutory claims, he asserts two claims based on alleged violations of (i) Virginia's Consumer Protection Act ("VCPA"), and (ii) Virginia's laws prohibiting false advertising. SAC ¶¶ 412–419. Both of these claims can be dismissed because they fail to state claims for relief under Rule 12(b)(6).

To start, D.J. brings a claim under the VCPA, which prohibits suppliers from engaging in

"fraudulent acts or practices," including, among other things, "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits"; and "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(A)(5), (A)(14). One important carve out to this statute is for products regulated by the federal government. *See Ball v. Takeda Pharms. Am., Inc.*, 963 F. Supp. 2d 497, 507 (E.D. Va. 2013) ("The VCPA, however, does not apply to federally regulated products."). The VCPA says that it does not apply to "[a]ny aspect of a consumer transaction which aspect is authorized under laws or regulations of . . . the United States, or the formal advisory opinions of any regulatory body or official of . . . the United States." Va. Code Ann. § 59.1-199(1). Fabrazyme is a biological product that is authorized and regulated by the FDA, *see* SAC ¶¶ 41, 91, and D.J.'s VCPA claim focuses entirely on representations Genzyme made about the effectiveness of Fabrazyme during the drug shortage, *see id.* ¶ 413. Since Genzyme cannot be sued over representations made in its advertisements or marketing materials about Fabrazyme given that these materials were regulated by the FDA, s*ee Ali v. Allergan USA, Inc.*, No. 12-cv-115, 2012 WL 3692396, at *19 (E.D. Va. Aug. 23, 2012), D.J.'s VCPA claims must be dismissed.

Similarly, D.J.'s claim under Virginia's false advertising law should be dismissed because the statute does not cover the types of statements Genzyme allegedly made about Fabrazyme. Virginia law "prohibits the use, in any advertisement, of 'any promise, assertion, representation or statement of fact which is untrue, deceptive or misleading' if the advertisement is made with the 'intent to sell' or 'to induce the public' to enter into an obligation." *Persaud Cos. v. IBCS Grp., Inc.*, 425 F. App'x 223, 227 (4th Cir. 2011) (quoting Va. Code Ann. § 18.2–216). If Va. Code Ann. § 18.2-216 is violated, then a party that suffers a loss resulting from that violation may bring

an action for damages under Va. Code Ann. § 59.1-68.3. *Id.* However, because Va. Code Ann. § 18.2-216 is a "penal statute," it "'must be construed strictly' and should not 'be extended by implication, or be made to embrace cases which are not within its letter and spirit.'" *Id.* (quoting *Henry v. R.K. Chevrolet, Inc.*, 254 S.E.2d 66, 68 (Va. 1979)). This is precisely what D.J. attempts to do here.

D.J.'s false advertising claim is premised on alleged (and ill-described) representations that Genzyme made about Fabrazyme during a drug shortage. These alleged communications were often made in the context of communications with the U.S. Fabry Stakeholders Working Group, in order to provide information to expert physicians and their affected patients. *See, e.g.*, SAC ¶ 221. Communications like this are a far-cry from the types of "advertisements" contemplated by Va. Code Ann. § 18.2-216 (and, by reference, Va. Code Ann. § 59.1-68.3), and a Virginia court would not allow this type of claim to proceed under a strict construction of the statute. Indeed, if this type of claim was allowed to proceed, Virginia's false advertising statute would be an easy way around the VCPA's specific exclusion of claims related to federally regulated products.

Moreover, D.J.'s false advertising claim is preempted by federal law because, in effect, his claim argues that Genzyme should have made disclosures and warnings about Fabrazyme beyond what was approved by the federal government. The federal FDCA governs warnings on pharmaceutical products, and federal law generally preempts brand drug manufacturers from issuing warnings outside of what is on a product's FDA-approved label. *See Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 660–61 (S.D.N.Y. 2017). Although there is an exception under the federal Changes Being Effected ("CBE") regulation—which requires "newly acquired information" that provides "'reasonable evidence of a causal association' of a 'clinically significant adverse reaction[]' to a drug," *Klein v. Bayer Healthcare Pharms. Inc.*, No. 2:18-cv-

01424, 2019 WL 3945652, at *5 (D. Nev. Aug. 21, 2019) (quoting 21 C.F.R. § 201.57(c)(6)(i); *see* 21 C.F.R. § 314.70(c)(6)(iii)—Plaintiffs have not alleged that there was such information requiring a label change.  Thus, D.J.'s Virginia false advertising claim and allegations ignores this CBE process and is preempted by federal law.  *See Ali*, 2012 WL 3692396, at *20 (holding that a false advertising claim was preempted because the statements at issue were approved by the FDA).

D.J.'s false advertising claim should also be dismissed because despite alleging that Genzyme committed fraud, his claim fails under Rule 9(b)'s heightened pleading standards.  As this Court previously concluded, Plaintiffs have not plausibly alleged with sufficient particularity that Genzyme made untrue or deceptive statements about Fabrazyme's efficacy at a lower dose. *See* Mem. & Order at 75.  Genzyme further explained in its original motion to dismiss how Plaintiffs offer only conclusory allegations that Genzyme knowingly misrepresented the safety and efficacy of low-dose Fabrazyme and provide no supporting factual allegations.  *See* Def.'s Mot. to Dismiss at 33–38, ECF No. 103.  Likewise, despite repeated allegations that Genzyme knowingly mislead patients about the safety of alleged Vesivirus-contaminated Fabrazyme, Plaintiffs' offer no specific allegations about where or how this fraud actually occurred.  *See id.*  Since D.J.'s false advertising claim relies on the same insufficient fraud allegations, his claim should be dismissed.

## III.    THE VIRGINIA WRONGFUL DEATH CLAIMS FAIL TO STATE A CLAIM.

Finally, the estate and certain beneficiaries of Teresa Viers and Joseph Wallace fail to state a claim under Virginia's wrongful death statute, or, alternatively, Virginia's survival action statute. These claims essentially incorporate the underlying products liability claims because the statute "does not create a new cause of action, but only a right of action in a personal representative to enforce a decedent's claim for any personal injury that caused death." *Tarbrake v. Sharp*, 894 F. Supp. 270, 271 (E.D. Va. 1995).  For the reasons discussed in past briefing and rulings, the Court

should dismiss the wrongful death claims brought on behalf of Teresa Viers and Joseph Wallace (as an alternative to the basis for dismissal described in Section I.C, *supra*).

In its original motion to dismiss, Genzyme described the many ways in which the products liability claims underlying the wrongful death claims were not viable as a matter of law. *See* Def.'s Mot. to Dismiss at 38–60, ECF No. 103. In addition, this Court, addressing Plaintiff LaForce's Virginia-based claims, agreed that there were many issues with the underlying claims, including that: (i) the negligent design theory fails because Plaintiffs did not clearly allege a "defect," Mem. & Order at 61; (ii) the failure-to-warn theory fails because of the "learned intermediary doctrine," *id.* at 62–64; (iii) a strict product liability claim is not permitted in Virginia, *id.* at 65; (iv) the implied warranty theory fails because there was no clearly defined "defect" and reliance was not sufficiently pled, *id.* at 65–67; (v) the express warranty theory fails because of insufficiently pled causation and the failure to establish that Genzyme made the express warranties, *id.* at 68–69; (vi) the Virginia statutory claims failed because they were specifically excluded by the statute or because of insufficient allegations under Rule 9(b), *id.* at 74–75; (vii) the fraud claims fail because of insufficient allegations regarding Genzyme's alleged misrepresentations or Plaintiffs' reliance under Rule 9(b), *id.* at 76–78; (viii) the fiduciary duty claims fail because Virginia would not recognize a fiduciary relationship in this case, *id.* at 78–80; and (ix) the unjust enrichment claim fails because Plaintiffs cannot show that they were operating under a mistake of fact, *id.* at 81–82. This Court should apply Genzyme's previous briefing as well as the District Court's previous analysis of these claims and find that Plaintiffs' wrongful death claims can be dismissed.

If, however, the Court does not agree with this previous analysis, it should at the very least narrow the scope of these claims by dismissing the improper Plaintiffs. Although Plaintiffs' complaint is somewhat confusing, it appears that Plaintiffs Eddie Viers, William McNew, Jeanne

Wallace, James Wallace, and Samuel Wallace are bringing wrongful death claims individually as opposed to merely on behalf of the decedent's estate. *See* SAC ¶¶ 420–429. However, Virginia's wrongful death statute provides that the action "shall be brought by and in the name of the personal representative of such deceased person." Va. Code Ann. § 8.01-50(C). Virginia courts interpret "personal representative" to include "the executor or administrator of a decedent's estate who has been qualified by a court to hold the position." *Grady v. Blackwell*, 902 S.E.2d 64, 68 (Va. Ct. App. 2024) (quoting *In re Woodley*, 777 S.E.2d 560, 563 (Va. 2015)). Moreover, "[a] wrongful death action may *only* 'be brought by and in the name of the personal representative of such deceased person.'" *Id.* Since only Jeanne Wallace and Eddie Viers have been identified as administrators of the respective estates, *see* SAC ¶¶ 421–422, they are the only proper Plaintiffs to bring these claims. Their individual claims along with any wrongful death claims brought by William McNew, James Wallace, and Samuel Wallace are improper and should be dismissed.

Finally, the Court should dismiss the alternate survival claims because Virginia's survival action statute "only applies to causes of action 'exist[ing]' prior to the decedent's death and provides that a 'cause of action asserted by the decedent in his lifetime' for personal injury does not 'survive,' but rather can be amended as a wrongful death action under Code § 8.01-56." *Campbell v. Harmon*, 628 S.E.2d 308, 312 (Va. 2006) (quoting *Hendrix v. Daugherty*, 457 S.E.2d 71, 73 (Va. 1995)). The decedents, Teresa Viers and Joseph Wallace, were both plaintiffs in *Adamo*, wherein they asserted claims against Genzyme during their lifetimes based on the same alleged injuries. As such, their personal injury claims do not "survive." *See id.* Plaintiffs' only option was to file a wrongful death claim, which fails for the reasons explained above.

## **CONCLUSION**

For the reasons set forth above, Defendant Genzyme respectfully requests that the Court dismiss Plaintiffs' claims with prejudice.

Dated:  January 3, 2025

Respectfully submitted,

/s/ *Robert G. Jones*
Robert G. Jones
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7000
Facsimile: (617) 951-7050
Robert.Jones@ropesgray.com

Renee T. Whyte (admitted *pro hac vice*)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9929
Facsimile: (212) 596-9090
Renee.Whyte@ropesgray.com

*Counsel for Defendant Genzyme Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 3, 2025, a copy of the foregoing was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ *Robert G. Jones*
Robert G. Jones
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7000
Facsimile: (617) 951-7050
Robert.Jones@ropesgray.com